second case is United States is 22-4738 United States v. Haynes mr. is a crony so whenever you're ready take your time sir thank you judge your honors my name is Fernando Graham a police to court I try this case and on behalf of mr. As-Samad Haynes and my opposing counsel mr. Coleman and mr. Hurt tried it representing the United States I mr. Haynes had actually racist five issues some of them with quite frankly more married than others one of them is the jury selection I understand there is no specific law in the in this circuit the government correctly and we recognize that in our reply brief points out a the case of Sengas from the 11th circuit I would briefly indicate that that case is still good law is a precedent or not a precedential but a persuasive value in this circuit nonetheless the facts and the Haynes case are different this was just not a regular conspiracy to possess with intent to distribute and distribute drugs and to have guns this is actually a case where as part of that conspiracy there was actually a distribution one particular discrete distribution in 2017 where two individuals purchased drugs from mr. Haynes according to the evidence one of they they actually injected heroin one of them died and the other one was injured that makes the connection between the arguments or the reservations expressed by the jurors the vernier the potential jurors much more significant and more likely to raise prejudice as to the composition of that and I did not frankly ask for it was which should be generally is done in either death cases or actually death penalty cases were an individualized what beer is conducted or a jury questionnaire is submitted I submit to the court that none of the jurors who indicated that they had experience past experiences with overdose death in their families or close friends or none of the jurors who indicated that they had a problem or that they thought they had a problem being fair and impartial as to my client during the trial we're actually in panic nonetheless it's hard to get the genie back into the bottle or the toothpaste back into the tube once that has been open so so that is the first issue of Mr. Haynes requested prior to the selection of the jury after the fact I objected prior to the impoundment of the object prior to the impoundment but you objected after the events that you're complaining of that the the comments that were made during the course of the general of ordeer that's what that's that's what you're you're complaining of I have some people answering questions truthfully asked by Judge Jackson correct about their own experiences that's correct and you're saying that tainted things but you didn't you didn't lay the groundwork beforehand well I did not object as the taint was being in my in my view performed yes sir that is correct however I objected prior to the you objected before the appareling you said that this went too far like that I believe your honor quite frankly that whether this court is willing to extend sang it or to differentiate the 11th Circuit case and there are some other cases from this circuit hinds well into this specific situation or not that's where that issue but the handling of discretionary thing it's a general proposition that is a strong general proposition handled by the trial judge correct and it's oh there's also a strong proposition that jurors or prospective jurors will follow the instructions of the court so that I will let that and if a juror said I can be impartial I can try the case on the basis of the law and the evidence they weren't subject to challenge recall that is correct and all the other ones that were actually spoke up and my argument is perhaps tainted the entire panel none of those got on the jury they're going they were challenged for call that is correct that's good you know it's not an unreasonable argument you make a good point counsel I guess the problem is that if district courts were required to conduct individualized board here in each and every case where there's some possibility as you pointed out of the genie getting out of the bottle I mean that we'd be in court forever I mean it's and the reality is that most jurors I would think would have some experience with someone either in their family a friend someone given the pervasive nature of drugs in our society today that had would have some experience it'd be hard to I think to jerk an ear your honor you're absolutely correct mr. hurt on the other side and I used to be a prosecutor and you know handled numerous cases from the other side and on this side on drugs the issue with fentanyl becomes different because the epidemic of fentanyl is so bad that it's the equivalent of one airline full of passengers crashing and everybody dying every day so where before there was when this Cengiz case for instance in the 80s and Florida which was by that time you know Cowboy City cocaine Cowboy City the experience that jurors have with drugs is different than the current experience created by the epidemic of opioids on fentanyl which makes more likely than not then anybody who's using any drug will have a speck of fentanyl and they might overdose sometimes with fatal consequences like in this case sometimes luckily with not but but that but that you're absolutely correct that is the issue on that on that matter well and we you know I think you alluded to Heinz where we've acknowledged that jurors can be biased against crime right and they can have they can know about the adverse consequences of crime but the question is whether they can still be fair to both sides and when you we've said when you have jurors say they can be fair to both sides the fact that they're aware of the adverse consequences even of drug crimes this is not enough reason to keep them off or to suggest that everyone on the jury is tainted right kind of no matter what the crime is that is correct judge the other issues that have been raised is actually one is of the sufficiency of the evidence as to the counts two and three which are actually counts two is the overdose death of the individual who died or an overdose death of an individual and the other one count three is no and an overdose of a separate individual one of them died one of them testified I submit to the court that there was insufficient evidence to to convict in those counts the government names protected or something during the course of the trial they were not judged but well I know that's but some of the briefs use initials some don't judge Jackson's opinion but surnames in there and I the government uses initials I did not indictment didn't give the names right that is correct one of them this fellow named Evans he testified it's all public record I submit respectfully that the mr. Evans did testify mr. Evans's recollection of course the juror believed part of it is hard to differentiate or distinguish what did they believe about him what stuck with the jurors and what was actually supported and buttress in impermissibly I argue in my next point by the testimony that the government included he testified sketchily he said my client was actually the one who supplied the heroin to him on July the 15th of 2017 the bulk of the evidence in that case as to those counts was actually my next argument the government presented a fellow named Paul Swartz who is widely regarded as the foremost expert on telephone analysis down in our neck of the woods and the Peninsula area of Virginia and the Tidewater area we all work together I had count tried numerous cases of all kinds of crime where the government brings in a sex expert to do cell analysis this distilled raw data put it particular defendant of a robbery outside of the location or within a certain number of miles from the location but he didn't do any of that here right he took cell wire and why texted X well he correct he took cell phone records from my client and the other two individuals mr. Evans and mr. Schroeder and did exactly that and my argument is that the only reason the only way that he could have done that which actually took him about 40 hours to do the only way that he could have done that is because he is an expert because he has specific skill knowledge experience in technological matters which as a result of him being an expert and undesignated in this case he said he said anybody could do this it would just take them longer but he's familiar with like the program where you put the data and well there was another witness who testified before him as to something else which really didn't require that much expertise who said I'm it took him a long time to do so without him he should have been designated as an expert what there was one to make he's an expert or a lay witness he's evidence came in well that you would on that change your closing argument maybe well I think it violates rule 701 federal rule of evidence 701 and 702 your honor and then judge Jackson would have been you know there's going to make a ruling there's a lot of spillover between lay testimony and expert testimony and judge Jackson he'd been around a long time he has a lot of cases a lot of experts a lot of lay witnesses but I do not I do not dispute that the government could have and quite frankly I was surprised that he wasn't designated as an expert then what difference does it make you're saying he testified as a lay witness but he totally could have testified as an expert absolutely qualified to do that so as judge King is pointing out then why does it matter his testimony and this chart that he put together would have come in either way in one way and as an expert the jury might be inclined to believe him even more right to credit his testimony even more because there's an expert but the government didn't get that they just got a lay witness that's true we can't speculate to that but that things should you know the rule is there for I thought that would help you that more qualifications than than any other anybody else in the courtroom I mean an expert supposedly does that's reason they call him an expert I would think calling him a lay witness would be helpful to the defense sometimes and and I'm the sort of defendant anyway on this side of the table we've got an expert a guy with a three-piece suit that comes from a hundred miles away you were in charges a lot but you're correct he could have he would have been able to testify that as an expert but he wasn't so maybe you're just quibbling that the last two arguments you're I don't blame you I mean I appreciate your work I am quibbling I think that I was surprised everybody should be surprised and I think that you know the weight in the what he did is he got that raw data that nobody else could have it was introduced we admitted to the raw data because without the analysis that's what it is just numbers that nobody can understand and that's the reason why he should have been testified qualified as he's like a summary witness it was he was a summary witness force for something that was not testified to were documents that were actually analyzed. Well Judge Jackson said he's just pulling back the facts that are already there well he just with I make it understandable judge I understand he had something there was some phrase he used I forgive what that was he also said that any digestible digestible it was more digestible it was really made it more digestible but without his expertise nobody could have he is the only one who kind of digested and presented it without that which is raw data the last argument that I have is actually two issues that I raise in sentencing I actually actually there I quite interesting issues what one of them is the notion that because of death resulted the guidelines there is a dichotomy I guess I'm gonna have to bring it up in my rebuttal but there is there seems to be two definitions of what qualifies an individual who's been convicted of selling a drug that results in an overdose whether the person dies or gets injured to a higher level sentencing guideline level 43 the guidelines say that is a similar offense the statute says a prior felony conviction a prior felony drug conviction and that is the distinction that my colleagues on the other side of the government are making because a prior felony drug conviction under the that elevates the sentencing guideline to a level 43 the sentencing guidelines itself says the individual has to have sold a drug which resulted in death or serious bodily injury and has been convicted of a previous similar offense a previous similar offense is actually a similar offense and if your honors go to sentencing guidelines this section the sentencing guidelines section itself talks about offensive dealing with manufacturer distribution or possession with intent which my client had been convicted of a previous drug offense for possession which wouldn't qualify either a under the statute or be under the sentencing guidelines we had cases that they may all be unpublished I don't know where we said a similar offense as a felony drug offense and this year the sentencing Commission agreed with us and changed the guidelines to clarify that and now the guidelines say that serious or what if what is it similar offense means felony drug offense as defined in 21 USC 802 your honor in closing for now I will say that the government and I think this court previously and the on the Johnson case from the Sixth Circuit and on the Davis case from the Sixth Circuit at wet as well in this in the Davis case the statute the the higher sentence was actually imposed using the statute which again broadly says previous drug offense the Johnson case the higher sentence was imposed using a combination of the statute and the sentencing guidelines and in that case mr. Johnson's previous conviction was mr. Johnson's current conviction for which he was being sentenced was for distribution which resulted in death and his previous conviction was for distribution itself my clients previous conviction was just for possession so my time has felony Virginia felony possession Virginia felony possession correct and the difference between the 43 you didn't want and you were arguing for a 38 is that what it was that is correct okay and I know and if I can I just answer your question the government is going to say mr. Grenis or mr. Haynes my clients argument on the on the correct calculation of that initial guideline and his other argument on the judge Jackson's failure to strike down an extra four levels for mr. Haynes representing misrepresenting that he was selling fentanyl when in fact he was selling something else should doesn't matter because judge Jackson departed and gave mr. Haynes a lower sentence anyhow yeah the guidelines gave him a life plus 60 bucks that's correct and you asked for 420 months 360 plus 60 months and that's what he did the judge gave him 420 months he gave him the thank you so much thank you counsel mr. Coleman this runner are you related to miss Coleman back there I was wondering why she was sitting there cheering you on or something go ahead may it please the court your honor we asked the court to affirm the district court here the veneer was not tainted the evidence of this defendants conviction was was more than sufficient the lay witness who testified as a summary witness here did so properly and the sentence here imposed was correct as opposing counsel just noted I think on the sentencing issue in particular the sentence imposed here was the very sentence that the defendant requested at sentencing so these issues that you know about what a was misrepresented as another drug those those didn't make any difference in the sentence imposed in the district court the district court even said at sentencing that described some of these issues as academic when he was announcing the sentence well I think you may have described the second enhancement issue is academic but didn't the first one matter or did neither one of them matter in terms of whether or not this defendant fell inside or if the defendant was enhanced for misrepresenting fentanyl then his guideline range would have been life plus 60 and so it would have made no difference if even if for instance if the base offense level was 38 because of this issue about whether there was a similar offense if you had taken the other enhancements in play and then you add the four four levels for the misrepresenting fentanyl you would still be over and it would be like plus 60 so I don't think it impacted in any meaningful way the sentence imposed by the district court the but in any case I think the district court was correct that it was a similar offense I would start with that particular issue your honor the district court looked at how the this court has cited the Sixth Circuit's opinion in Johnson which explained that the language in the offense as that term is defined in title 21 and and that term would certainly capture here this defendant had a prior conviction for a felony drug offense felony possession of cocaine your honor and this court has cited Johnson favorably in an unpublished opinion as the court noted as recently as this year for this exact point about how 2d 1.1 is really a guideline provision that is keyed off of the statute and that the base of pencils come from that statute and that the court ought to look at the history of that provision and how it's and how it's put together and I think that the court is also right to point out that that this provision has changed with the recent guideline provision now it says it's a serious drug felony which has a different definition but the provision in effect at the time of this sentencing certainly would have captured the conduct that this defendant had as a prior drug felony on the on the question of the fentanyl misrepresentation I think the court today a lengthy made a lengthy factual finding here about how the defendant was cutting drugs with fentanyl in order to make them more profitable and that and that there was a recorded call where the defendant discussed doing doing exactly that and that there was a search warrant done of the defendant's residence at the time of his arrest and they located separately bagged quantities of heroin and fentanyl and then a mirror on a coffee table in the living room with a razor blade and residue from both heroin and fentanyl in it and and and I think that the district court was right to enhance the unless the court has any questions about the sentencing issues live and but there's no direct evidence that the particular you know baggies that were distributed to these two defendants was in fact laced with both heroin and fentanyl right you have to sort of make an inferential sort of leap not a leap but you have to look at the circumstantial evidence and come to that conclusion that fair that's fair your honor I think it is circumstantial there's a lot of circumstantial evidence here though you know you have a series of controlled purchases from this defendant all of the drugs are cut with various different kinds of drugs you have the defendant discussing cutting the drugs in order to make them more profitable to stretch the product and then you have this search where you find separately backed quantities of heroin and fentanyl and then you also have a bag of 0.2 grams of a mixture containing both heroin and fentanyl and the primary cooperator in this case Lisa Dufour testified that that 0.2 is a user level quantity of these drugs and so what you have is two separate distribution quantities of heroin and fentanyl a mirror with both drugs mixed together and then a bag of a user level quantity where they're cut together so I think the district court was right to find that there was sufficient evidence I think just Jackson even said that the jury could have found beyond a reasonable doubt that that he knew he was cutting this product and misrepresenting it don't use a witness or expert or lay witness whatever to explain all this terminology of street drugs and stuff for the jurors we did not sometimes you do these yeah sure we didn't have somebody explain kilos and ounces and relationship and all those things that's like a lot of Greek most people yes sir we had you're selling by the ounce but you got to prove it by a kilo yes yes sir we did not have a an able to figure that stuff out the jury was able to figure that out because we had direct evidence from the defendants co-conspirator who walked the jury through how his drug business grew that was his lady friend who was invited with him yes sir who also participated she talked in terms of ounces she started by saying that in the beginning he purchased smaller quantities of drugs and then as the business became more more successful that he was purchasing higher and higher quantities of drug two of these counts they had to prove about prove a kilo that's right you're out of the kilogram I mean who's explaining what that was I mean the the the primary co-conspirator testified that the defendant was purchasing multiple ounces per week for I think the year leading up to his arrest which would certainly exceed the one kilogram threshold and the jury could rely on what that what that person testified to in court about the drug weight we also had an informant who testified that he purchased drugs on a regular basis almost every day for a period of years from the defendant and described the quantities of those drugs just the purchases that informant made alone would be close to a kilogram of heroin if not in excess of it your colleague on the other side if I recall correctly in his brief and this is related to judge King's question did make an argument I think that even though this expert expert like you call him an expert mr. Schwartz or lay witness primarily talked about the summary of the calls there was at least one reference to his interpreting coded language that drug the drug conspirators would use I mean that's expert testimony when you agree I'm aware of authority from this court that talks about interpreting calls I think judge Jackson was very careful to police that all that that mr. Swartz was doing in this particular case was piecing together the contacts between our victims and and and the defendant here well what did he do it in every case that that's not what he does in every case you're already know I mean here I mean did it happen I mean it wasn't there some testimony I'll be it about what certain coded language meant in this case if there was around I'm not aware of any objection that was made in the district court at the time to object to what he had testified to in that that's that particular issue how's the jury supposed to understand the straight language that's what I thought you usually got some paper to explain it to well I mean it's my recollection that a kilogram is a 35 ounces did anybody ever tell him that your honor that the co-conspirator missed you for she testified as to the amount of ounces in a kilogram when she was on the stand I think she was asked on cross-examination as I recall that very question because of her familiarity with the drug business and knowing you know how many ounces are in a kilogram she was able to question and explain that to the jury on this particular didn't get back to this question from the court about mr. Swartz I think really the question for I just say you say you don't remember it but this specific language was some reference arena puppy chow or chew or cheat or something or other and that really meant hardcore for a hardcore Henry which is another coded phrase for drugs and that that's sort of what I'm getting at that they were texting back and forth using the language in the text messages and those text messages directly proceed the purchase of of fentanyl and acetafentanil that led to the overdose of Sean Schroeder and Ian Evans but but mr. Swartz wasn't saying that what wasn't you know in some cases the court has objected to having someone testify as a lay witness and say you know when they talk on this jail call they really mean this without having proper predication to do that that's not what mr. Swartz was doing here he was he was simply a summary witness to summarize the voluminous phone records between the the victims and the and the and and the and the defendant here that that lead up to the the overdoses in and then yeah and then the government argued in closing you know that the jury should look at those messages because there are contacts that lead up to you know this particular drug purchase and then the overdose in question I don't know if the court has questions about the veneer issue I'm happy to address that if the court does but unless the court has any other questions that's all I have here all right Thank You mr. Coleman Bernie Thank You judge your honors I'd like to address the last two issues that I originally addressed and I hope that that they're important enough that they can make it into some sort of opinion not in a footnote but even if it is we'll welcome it as to as to the enhanced guideline we brief we brief that issue here somewhat at page 45 beginning of page 45 of our brief and actually in the joint appendix in a objection to the calculation of the sentencing guidelines at page 77 and when we were arguing it we made our argument and judge Jackson said I understand what your argument but the view and expand the definition of similar offense judge Russian says that it has if it has I would ask the court to consider this argument and determine whether that's exactly the precedent that you have said as to as to the other four level enhancement I think the government is mixing apples and oranges that also has been briefed at page beginning of page 49 of our initial brief and at joint appendix 977 the objection this is a case where the distribution of fentanyl that killed that individual and injured the other one happened in July of 2017 the search warrant that mr. Coleman is talking about didn't happen until November the 5th of 2020 when they got what the use relied on I guess a trial and in the sentencing was in the sentencing hearing to apply this for level enhancement it's in my brief and it's on the transcript is actually a conversation between a confidential informant that they flipped it's a guy who was buying pills for my client's stepmother I'm sorry isn't that isn't the testimony of the victim who survived enough he said we went to buy heroin that's all we wanted we asked for heroin we got the wrong stuff and then his friend and he said we didn't do any other drugs from any other place that night and then his friend died of fentanyl so doesn't that suggest that the defendants sold them fentanyl mixed in the heroin I would answer your honor specific question it does however the misrepresenting right which is why he said they sold us the wrong stuff that's not what we asked for he misrepresented it well he didn't say mr. with all the respect he did right that's the that's the inference well I wanted a I got B we can infer that he was never told I'm giving you B maybe so I don't think the evidence shows that and I will tell the court I probably shouldn't but I would tell the court what it has happened really with drugs and then this is because it's gonna come up I had cases I think with mr. hurt where my client was actually caught with two kilograms of cocaine have two separate locate times one time the cocaine had fentanyl and even if it is one speck of fentanyl one gram of fentanyl the lab will say a thousand grams of fentanyl the sentence will be two and a half times higher than just heroin but it will say fentanyl so but the first time had fentanyl the second time it just had heroin my client did not step on the drugs he the drugs with some with heroin with fentanyl heroin without fentanyl were actually seized by DEA shortly after he got him from his dealer he requested fentanyl do you talk about it you're talking about a different case right I'm talking about a victim who survived says I wanted heroin but my friend died from fentanyl and then there's other evidence that supports the idea that this defendant knew how to cut drugs was interested in stretching his heroin etc etc that you say may be from a different time or a few months later or whatever right okay but but what actually the government what the government argued and what the enhancement was a conversation between my client and one of the CI's where they were talking about cutting pills not heroin not hard drugs pills and actually they had the conversation and they had the drug certificate of the sale that took place that time and it was heroin no fentanyl thank you thank you appreciate your taking the appointment and we always appreciate court-appointed lawyers coming into court and quibbling with us about really important issues and making these cases much more digestible and you've done that on behalf of your client today so I want to thank you thank you for that we'll come down and greet counsel and then take a short recess before moving on to our third and final case
judges: Albert Diaz, Robert B. King, Allison J. Rushing